UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PAULA NELSON,

                         Case No. No. 19-12964

          Plaintiff,            District Judge Paul D. Borman

v.                            Magistrate Judge R. Steven Whalen

ANDREW SAUL,
COMMISSIONER OF
SOCIAL SECURITY,

         Defendant.
_____ /

## REPORT AND RECOMMENDATION

Plaintiff Paula Nelson brings this action under 42 U.S.C. §405(g), challenging a final decision of Defendant Commissioner denying her application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act. The parties have filed cross-motions for summary judgment which have been referred for a Report and Recommendation pursuant to 28 U.S.C. §636(b)(1)(B). For the reasons set forth below, I recommend that Defendant's Motion for Summary Judgment [ECF No. 17] be GRANTED and that Plaintiff's Motion for Summary Judgment [ECF No. 12] be DENIED.

-1-

# I.  PROCEDURAL HISTORY

On December 16, 2016, Plaintiff filed an application for SSI, alleging disability as of December 11, 2014 (Tr. 243).  Upon initial denial of the claim, Plaintiff requested an administrative hearing, held on May 7, 2018 in Oak Park, Michigan (Tr. 31).  Administrative Law Judge ("ALJ") Patricia McKay presided.  Plaintiff, represented by attorney Clifford Walkon, testified (Tr. 44-69), as did Vocational Expert ("VE") Helen Topcik (Tr.  70-78).  On September 25, 2018, ALJ McKay determined that Plaintiff was not disabled (Tr. 10-20).  On August 22, 2019, the Appeals Council declined to review the ALJ's decision (Tr. 1-3).  Plaintiff filed suit in this Court on October 9, 2019.

# II.  BACKGROUND FACTS

Plaintiff, born May 28, 1961, was 57 at the time of the  administrative decision (Tr. 20, 243).  She completed 12th grade but took special education classes while in elementary school (Tr. 273).  She completed a cosmetology course (Tr. 273).  She worked previously as a home health aid, casino employee, and clerical worker (Tr. 274).  She alleges disability as a result of hypertension, pain, headaches, vertigo as well as tendon, ankle, back shoulder, and knee problems (Tr. 272).

## A.  Plaintiff's Testimony

*Plaintiff's counsel prefaced the testimony by amending the alleged onset date to May 28, 2016, Plaintiff's 55th birthday (Tr. 35).  He noted that in addition to long-standing health conditions, Plaintiff fractured her right ankle in January, 2016, and continued to experience*

*symptoms* (Tr. 37).  *He noted that Plaintiff also injured her right (dominant) shoulder and experienced worsening symptoms of hypertension with medication side effects* (Tr. 38).

Plaintiff then offered the following testimony:

She lived with her 27-year-old daughter and six-year-old granddaughter (Tr. 44). Her daughter worked the midnight shift (Tr. 44). She did not take care of her granddaughter (Tr. 44). They lived in a two-story home, and Plaintiff slept on the first floor (Tr. 44-45).

Plaintiff could drive and had driven to the hearing alone (Tr. 45, 63). She had a handicap sticker on her car (Tr. 45). She had taken college courses at a community college but did not have a degree (45-46). Her former work included the job of scheduling clerk (Tr. 46). She did not know how to word process "with all [of her] fingers" (Tr. 46). She performed the job full-time between 2006 and 2008 (Tr. 46). The job required her to sit in front of a phone or computer most of the work shift (Tr. 47). She was required to log medical appointments into a computer program (Tr. 65). She was not required to do any lifting (Tr. 47). Her former work also included a year-long stint as a home health care aide (Tr. 47). The job required her to be on her feet most of the day and required significant lifting (Tr. 48).

In 2015, Plaintiff tore her right rotator cuff and injured her right ankle falling down a flight of stairs (Tr. 48-49). She had a right ankle cast for "months" and later underwent surgery (Tr. 49). She currently used a brace for the ankle but continued to experience pain (Tr. 50). She used a cane "occasionally" and a walker only when walking long distances (Tr.

50).   As a result of the rotatory cuff tear and ensuing arthritis, she experienced pain and limitation while combing her hair, reaching, and lifting (Tr. 50, 61).   Back pain limiting her range of motion had become worse in the two years before the hearing (Tr. 51).   She received an injection and brief physical therapy sessions for the shoulder and back conditions (Tr. 63). In addition, her right knee "went out" periodically, causing her to trip or fall (Tr. 55).   She stood 5' 10" and weighed 275 pounds (Tr. 56).

Plaintiff took Motrin and Norco for pain and anti-hypertension medication on a daily basis (Tr. 53).   Her hypertension was brought under control with large doses of medication but she experienced the side effect of drowsiness, fatigue, and frequent urination (once an hour) (Tr. 53, 56).   As a result of the medication and joint discomfort, she took a morning and noontime nap every day (Tr. 55, 58).   She was able to sit for up to 45 minutes, stand for 15, and walk for up to half a block (Tr. 57).   She was able to lift up to 15 pounds with her left hand but only 10 with her right hand (Tr. 57).   Her meal preparation was generally limited to microwaving simple meals (Tr. 58).   She smoked one cigarette a day but did not use alcohol or recreational drugs (Tr. 64).

### B. Medical Records

#### 1. Records Related to Plaintiff's Treatment[1]

April, 2015 records note a partial tear of the left knee meniscus (Tr. 359).  In July, 2015, Plaintiff sought emergency treatment after her knee "gave out" (Tr. 379-380).  She was advised to follow up with an orthopedic specialist (Tr. 380).  Treating observations from the following month included a normal gait and the absence of knee swelling (Tr. 383).  Imaging studies show mild osteoarthritis of the left knee (Tr. 383, 386).  She received a left knee steroid injection (Tr. 383).   The following month, she sought treatment for a left wrist growth and intermittent back pain (Tr. 388).  She was prescribed physical therapy (Tr. 389).  Imaging studies of the lumbar spine showed moderate degenerative disc disease (Tr. 382).

November, 2015 records state that Plaintiff declined to undergo physical therapy (Tr. 394).  She demonstrated full strength in all extremities (Tr. 395).  She was urged to undergo physical therapy (Tr. 395).  December, 2015 imaging studies of the lumbar spine showed moderate to severe degenerative disc disease unchanged from a September, 2015 study (Tr. 361, 401). Cervical spine studies from the same month also showed moderate to severe degenerative changes (Tr. 362, 399).  A January, 2016 study of the left hand was negative for arthritis (Tr. 404).  February, 2016 treating records note reports of right foot pain (Tr.

---

[1]Records pertaining to Plaintiff's condition prior to the amended alleged onset of disability date of May 28, 2016 are included for background purposes only.  Records concerning conditions unrelated to the application for benefits are omitted from discussion.

341).  Plaintiff's blood pressure was "good" on medication (Tr. 343).    March, 2015 emergency room records note that Plaintiff requested a new right ankle cast after walking on the cast against medical advice (Tr. 364).

March, 2016 records show full muscle strength of the lower right extremity (Tr. 500). A May, 2015 MRI of the right ankle showed tendinosis and tenosynovitis (Tr. 468-470). June, 2016 records note Plaintiff's reports of continued right ankle pain (Tr. 490).  She exhibited full muscle strength and the absence of muscle atrophy (Tr. 491).

In July, 2016, treating physician Dawn Foster, M.D. completed an assessment of Plaintiff's work-related activity, finding that as a result of degenerative disc disease and knee and shoulder problems, Plaintiff was limited to lifting 20 pounds on an occasional basis; walking/standing for one hour in an eight-hour workday; and sitting for two hours with position changes at least every 45 minutes (Tr. 372).  She found that Plaintiff was limited to less than occasional grasping; frequent fine manipulation; less than occasional overhead reaching with the left extremity; and a preclusion on overhead reaching on the right (Tr. 372). Dr. Foster found that Plaintiff would be expected to be absent two days a month (Tr. 372). As to postural activity, she found that Plaintiff was unable to twist, stoop, crouch, and climb ladders; rarely look up or down or turn her head; and frequently hold her head in a static position (Tr. 373).  She found that Plaintiff's prognosis was "fair" and that even desk work would be limited by Plaintiff's need to change position often (Tr. 376).

The same month, Plaintiff reported good results from steroid injections to the right ankle (Tr. 484, 489). September and October, 2016 records show Plaintiff's report of pain but a normal neurological examination (Tr. 473, 478-479). In November, 2016, Plaintiff reported continued right ankle pain declined to consider surgery (Tr. 271). She demonstrated full strength and normal muscle tone (Tr. 472-473). She received a steroid injection to the right ankle and was advised to attend physical therapy and use shoe inserts (Tr. 472). In February, 2017, Plaintiff reported increased right shoulder pain (Tr. 448). In April, 2017 she reported right shoulder and low back pain (Tr. 447).

## 2. Non-Treating Records

In November, 2016, Hassan Amhaz, M.D. performed a consultative examination on behalf of the SSA, noting Plaintiff's report of long-term back pain and an April, 2015 right ankle fracture (Tr. 438-439). Plaintiff also reported knee pain and occasional shoulder pain (Tr. 439). Plaintiff rated her pain level at "six" out of ten at best and "nine" at worst (Tr. 439).

Dr. Amhaz noted that Plaintiff appeared comfortable without "pain-mitigating movements" (Tr. 440). She exhibited a normal range of motion and full strength in all extremities (Tr. 441). An x-ray showed post-operative changes of the right foot with degenerative changes at the first metatarsophalangeal joint (Tr. 443). Dr. Amhaz found that Plaintiff could sit without limitation; stand or walk for up to eight hours in an eight-hour workday; and lift/carry up to 30 pounds occasionally and 20 frequently (Tr. 444). He limited

her to occasional postural activity (Tr. 444). He found that Plaintiff would benefit from the ongoing use of an ankle brace (Tr. 444).

In January, 2017, B.D. Choi, M.D. performed a non-examining review of the treating and consultative records, finding that Plaintiff could stand, walk, and sit for up to six hours in an eight-hour workday; lift 20 pounds occasionally and 10 frequently; and push and pull without limitation except for a restriction to "frequent" pushing in the lower right extremity (Tr. 155-156). Dr. Choi limited Plaintiff to occasional postural activity except for frequent balancing and stair/ramp climbing (Tr. 156). He found that Plaintiff should avoid concentrated exposure to hazards such as machinery and heights (Tr. 157).

### C.  Vocational Testimony

VE Topcik classified Plaintiff's past work as a home health aide as semiskilled and exertionally medium and work as an appointment clerk, semiskilled/sedentary[2] (Tr. 73). ALJ McKay then posed the following set of limitations to the VE, describing a hypothetical individual of Plaintiff's age, educational level, and work history:

---

[2]

20 C.F.R. § 404.1567(a-d) defines *sedentary* work as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools;  *light* work as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds;" *medium* work as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds;" and that exertionally *heavy*  work "involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds. *Very Heavy* work requires "lifting objects weighing more than 100 pounds at a time with frequent lifting or carrying of objects weighing 50 pounds or more. § 404.1567(e).

> She is able to perform the full range of a light exertional job but she would be
> further limited to frequent pushing or pulling with the right lower extremity,
> frequent climbing of stairs and ramps and balancing, occasional climbing of
> ropes, ladders, scaffolds, stooping, kneeling, crouching and crawling and avoid
> concentrated exposure to unprotected heights and moving machinery. Can that
> person do either of these past two jobs that you classified for us for Ms. Nelson
> either as she did them or as they're generally performed in the national
> economy? (Tr. 73).

The VE testified that the above limitations would not allow for Plaintiff's past work

as a home health aide but would allow for the former work of an appointment clerk (Tr. 74).

The ALJ then added the following restrictions to the original question:

> [O]ccasionally climbing stairs, crouching, crawling, kneeling, stooping or
> bending, climbing ramps, occasional or not working near hazards, so she's not
> climbing ladders, ropes or scaffolding or working around unprotected heights
> and moving machinery. And as far as reaching with the dominant right upper
> extremity to be frequent reaching on a frequent basis in all directions but
> occasionally reaching overhead (Tr. 74).

The VE testified that the additional restrictions would allow the individual to perform the job

of appointment clerk (Tr. 74). However, the VE testified further that if the individual were

limited to occasional reaching with the right upper extremity with no overhead reaching, the

individual would be unable to perform the clerk position (Tr. 74). She stated that due to

currently available height-adjustable desks, the individual would be able to change from a

sitting to standing position every 45 minutes (Tr. 76). The VE testified that the need to take

bathroom breaks more frequently than every hour; nap twice a day; or take two absences a

month would be work preclusive (Tr. 77). She stated that her testimony was based on the

information found in the *Dictionary of Occupational Titles* ("*DOT*") and *Selected*

*Characteristics of Occupations* ("*SCO*"), as well as her own professional experience (Tr. 77).

### D.  The ALJ's Determination

ALJ McKay found that she was not bound by a January 22, 2015 non-disability determination on a prior application for benefits because of "new and material" evidence warranting a more restricted Residual Functional Capacity ("RFC") (Tr. 11).  Citing the medical transcript, ALJ McKay found that Plaintiff experienced the severe impairments of "degenerative disc disease [], degenerative disc disease of the cervical spine, degenerative joint disease [] of the left knee with a history of crepitus, degenerative joint disease of the right foot with history of open reduction and internal fixation, right ankle tenosynovitis of the peroneal and posterior tibial tendon, history of obesity, right ankle fracture, . . . history of hypertension" and obesity but that none of the conditions met or equaled a listed impairment found in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 13-14).  The ALJ found that stab wounds to the left hand for which Plaintiff was successfully treated were a non-severe impairment (Tr. 13).  ALJ McKay determined that Plaintiff had an RFC for sedentary work with the following additional restrictions:

> [S]he can occasionally climb stairs, crouch, crawl, kneel, stoop, and bend. She can have no exposure to workplace hazards such as dangerous, moving machinery and unprotected heights; accordingly, the claimant can never climb ladders, ropes, or scaffolds. She can frequently reach in all directions with the dominant right upper extremity; provided, however, that she can only occasionally reach overhead with that extremity (Tr. 15).

Citing the VE's testimony, the ALJ determined that Plaintiff could perform her past relevant work as an appointment clerk (Tr. 19, 76).

-10-

The ALJ found that the treating records supported the ability to perform a range of sedentary work.  The ALJ noted that Plaintiff's treatment had been limited since the previous non-disability finding, noting that Plaintiff declined to attend physical therapy and did not follow her podiatrist's direction not to walk on the fractured ankle (Tr. 16).  The ALJ cited August, 2015 treating records showing a normal gait without an assistive device (Tr. 16).  The ALJ noted that Plaintiff's allegations of back pain were borne out by December, 2015 imaging studies (Tr. 17).  As to the ankle condition, the ALJ noted that in November, 2016 Plaintiff declined to undergo surgery despite complaints of chronic ankle pain (Tr. 18).  The ALJ declined to adopt Dr. Amhaz's consultative finding that Plaintiff could perform a range of exertionally light work, noting that the one-time examination "did not consider all of the pertinent medical evidence" (Tr. 19).  The ALJ also declined to adopt Dr. Foster's finding that Plaintiff was incapable of even sedentary work (Tr. 18-19).

### III.  STANDARD OF REVIEW

"Under the substantial evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, — U.S. —, 139 S.Ct. 1148, 1154 (2019)(punctuation altered)(*citing Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938))(emphasis deleted).  The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence.  *Biestek* at 139 S. Ct. at1152; 42 U.S.C. §405(g).  "Substantial evidence is defined as 'more than a scintilla

of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r. of Soc. Sec*., 486 F.3d 234, 241 (6th Cir. 2007)(*citing Cutlip v. Sec'y of Health & Human Servs*., 25 F.3d 284, 286 (6th Cir.1994)).

The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986)(*en banc*). Where substantial evidence supports the ALJ's decision, the reviewing court "defers to that finding even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r. of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009)(*citing Key v. Callahan*, 109 F.3d 270, 273 (6th Cir.1997)). However, in determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

## IV. FRAMEWORK FOR DISABILITY DETERMINATIONS

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected

to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy. 20 C.F.R. §416.920(a). The Plaintiff has the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy." *Her v. Comm'r of Soc. Sec.,* 203 F.3d 388, 391–92 (6th Cir. 1999).

## V. ANALYSIS

### A. The Residual Functional Capacity

Plaintiff argues first that the Residual Functional Capacity ("RFC") for a limited range of sedentary work found by the ALJ does not account for her limitations as a result of cervical spine limitations. *Plaintiff's Brief,* ECF No. 12, PageID.557 (*citing* Tr. 15). She argues further that the RFC did not reflect the medication side effects of drowsiness or the need for a cane or walker. *Id.* at 558-560.

An RFC describes an individual's residual abilities. *Howard v. Comm'r of Soc. Sec.,* 276 F.3d 235, 239 (6th Cir. 2002). The "RFC is to be an 'assessment of [a claimant's] remaining capacity for work' once [his] limitations have been taken into account" *Id.* (*quoting*

20 C.F.R. § 416.945). In determining a claimant's RFC, it is necessary to consider (1) objective medical evidence as well as (2) subjective evidence of pain or disability. §§ 404.1545(a)(1); 416.945 (RFC must be based on all "relevant evidence"). The ALJ must consider the alleged physical, mental, and environmental restrictions in crafting the RFC. §§ 404.1545(b-d); 416.945; SSR 96-8p, 1996 WL 374184, at *6 (June 2, 1996).  An ALJ is permitted to draw from multiple medical sources in whole or part in crafting the RFC. *Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 728 (6th Cir. 2013); SSR 96-8p at *2.

Contrary to Plaintiff's argument, the RFC and the accompanying rationale for the RFC adequately address both the cervical spine condition and the alleged medication side effect of drowsiness.  The ALJ cited the December, 2015 imaging studies of the cervical spine showing moderate to severe degenerative changes and acknowledged that the condition caused "pain, interference in her activities of daily living, and [restrictions] in range of motion" (Tr. 17).  The RFC itself reflects limitations from the cervical spine condition by restricting Plaintiff to lifting a maximum of 10 pounds, no overhead reaching with the right extremity, and only occasional crouching, crawling, kneeling, stooping, and bending (Tr. 15).  Substantial evidence easily supports the RFC and even a lesser degree of upper body restriction.  In November, 2016, Dr. Amhaz observed that Plaintiff was able to sit comfortably for the duration of the consultative examination "without "pain-mitigating movements" and demonstrated a full range of motion and strength in all extremities (Tr. 440-441).  Notwithstanding Dr. Foster's July, 2016 disability opinion stating that Plaintiff was unable to reach overhead of turn her neck (Tr. 372-

-14-

373), treatment records created during the relevant period do not document chronic upper extremity range of motion limitations.

The ALJ likewise acknowledged the potential medication side effects of the prescribed medication, noting Plaintiff "reported side effects from her medications, including sleepiness" (Tr. 18), reflected in the RFC's preclusion on "workplace hazards such as unprotected heights and dangerous machinery" and ramp, ladder, and scaffold use (Tr. 15).[3]  Again, substantial evidence supports the conclusion that the alleged side effects did not preclude Plaintiff's past relevant work.  Dr. Amhaz described Plaintiff as "alert and appropriate" with "clear and coherent" speech during the course of the consultative examination (Tr. 440).  The treating records for the relevant period do not include observations of sleepiness or lack of focus (Tr. 409, 412, 414, 416, 418).  As such, the ALJ did not err in finding that the alleged side effects did not require a greater degree of limitation than found in the RFC.

Finally, Plaintiff argues that the RFC did not reflect her need for an assistive device. ECF No. 12, PageID.559 (*citing* Tr. 19).  However, the ALJ acknowledged that in early 2016, a treating source gave Plaintiff crutches for walking and due to "pain and difficulty walking," (Tr. 18) and that as such, Plaintiff was limited to sedentary work "with no more than occasional climbing of stairs" (Tr. 17-18). This argument is more obviously defeated by Plaintiff's own

---

[3]

Plaintiff is correct that the ALJ must consider alleged medication side effects in assessing a claimant's credibility, 20 C.F.R. §§ 404.1529(c)(3), 416.929(iv), but cites a now-rescinded ruling in support of this argument.  SSR 16–3p sets forth the current standard for evaluating the alleged limitations using a two-step process. 2016 WL 1119029, at *3 (Mar. 16, 2016).

report that her former job as a appointment clerk did not require *any* walking aside from bathroom or luncheon breaks (Tr. 47).  Because the job did not require walking, the issue of whether the RFC ought to have included the need for a walking aid is moot.   Plaintiff's claim that the need for an ambulatory device ought to have been included in the RFC is also undermined by her own testimony that she used a cane on an occasional basis only and a walker only when walking long distances (Tr. 50).

### B.  The Medical Opinion Evidence

On a related note, Plaintiff faults the ALJ for declining to adopt Dr. Foster's July, 2016 finding of the inability to perform even sedentary work.  ECF No. 12, PageID.561 (*citing* Tr. 19, 372-376).  Plaintiff points out that the ALJ also declined to adopt Dr. Amhaz's November, 2016 consultative finding that she was capable of light work and as a result, the ALJ's "compromise" conclusion that she was capable of sedentary work is unsupported by any medical opinion.  *Id.*  Plaintiff contends that in making the sedentary work finding, the ALJ improperly substituted her own "medical judgment" in place of the evidence of record.  *Id.* at 562.

I first address Plaintiff's claim that the ALJ's partial rejection of Dr. Foster's treating opinion was substantively and procedurally deficit. For the period under consideration, the opinion of a treating physician should be given controlling weight if "well-supported by medically acceptable clinical and laboratory diagnostic techniques," and "not inconsistent with the other substantial evidence." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir.

2004) 20 C.F.R. § 404.1527(c)(2); SSR 96–2p, 1996 WL 374188, at *5 (1996). In weighing the treating physician's opinion, the ALJ must consider (1) "the length of the ... relationship" (2) "frequency of examination," (3) "nature and extent of the treatment," (4) the "supportability of the opinion," (5) the "consistency ... with the record as a whole," and, (6) "the specialization of the treating source." *Id.*

In the instance where the ALJ declines to accord controlling weight to a treating opinion, he or she must provide "good reasons" for discounting the treating opinion. *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013); *Wilson*, 378 F.3d at 544–546 (6th Cir. 2004); SSR 96–2p at *5. The failure to articulate "good reasons" for rejecting a treating physician's opinion constitutes reversible error. "[T]he Commissioner imposes on its decision-makers a clear duty to 'always give good reasons in our notice of determination or decision for the weight we give [a] treating source's opinion.'" *Cole v. Astrue,* 661 F.3d 931, 937 (6th Cir. 2011). "These reasons must be 'supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.' " *Gayheart*, at 376, (*quoting* SSR 96–2p, at *5).

The ALJ's accord of only partial weight to Dr. Foster's July, 2016 opinion does not constitute error (Tr. 18-19, 372-376). First, the ALJ considered the applicable factors in weighing the treating opinion by first noting that Plaintiff began treatment with Dr. Foster in April, 2015 and that the treatment was continuing at the time of the July, 2016 assessment (Tr.

16, 18-19).  The ALJ acknowledged that Dr. Foster was a primary care provider (Tr. 18). In terms of "supportability," the ALJ noted Dr. Foster's "exertional, postural, and manipulative limitations were "not congruent" with the record as whole (Tr. 18). In support of this conclusion, she noted that Plaintiff's conditions had been "amenable to conservative treatment" (Tr. 19) and that the subjective allegation of conservative treatment had been undermined by the failure to attend physical therapy and declining to follow podiatrist's recommendations (Tr. 16).  The ALJ also noted that Dr. Foster's opinion stood at odds with Dr. Amhaz's findings, which included a full range of motion, full strength, and the ability to sit without discomfort (Tr. 19).  For these reasons, the ALJ's well-supported and articulated rejection of Dr. Foster's opinion does not warrant a remand.

Plaintiff's overlapping claim that the ALJ erred by declining to wholly adopt either Dr. Foster's treating opinion or Dr. Amhaz's consultative findings is not well taken.  "[T]he ALJ's RFC finding need not correspond to a particular physician's opinion." *Daniel v Comm'r of Soc. Sec.,* 2020 WL 4915557, at *4 (E.D. Mich, August 20, 2020)(Lawson, J.)(RFC for sedentary work permissible despite that both medical opinions of record found claimant not capable of even sedentary work)(*citing Rudd, supra* 531 F. App'x at 728).  The Sixth Circuit does not require that "'medical opinions must be the building blocks of the [RFC]'" so long as the ALJ "'make[s] a connection between the evidence relied on and the conclusion reached.'" *Id.* (*quoting Tucker v. Comm'r of Soc. Sec.,* 775 F. App'x 220, 226 (6th Cir. 2019)).

The ALJ provided a logical bridge between the evidence and the RFC for sedentary work (Tr. 16).  She cited records showing a full range of lower extremity motion and that Plaintiff did not experience trouble walking for short distances (Tr. 17).  She declined to adopt both Dr. Foster's opinion of extreme disabling limitation and Dr. Amhaz's finding that Plaintiff was capable of light work, noting that Dr. Amhaz's opinion did not adequately consider the right foot limitations (Tr. 18-20).

Substantial evidence otherwise supports the ALJ's compromise RFC for sedentary work.  Plaintiff demonstrated repeatedly full strength in the lower extremities just prior to and repeatedly during the relevant period (Tr. 472-473, 478-479, 491, 500).  Strength testing in November, 2016 showed full strength in all extremities and a normal range of motion (Tr. 441).  Plaintiff has not met her burden to show that she is incapable of sedentary work.  *See Her, supra,* 203 F3d at 391 ("[W]e note that the burden of proof lies with the claimant at steps one through four of the process . . .").  Accordingly, the conclusion that Plaintiff could perform a limited range of sedentary work does not provide grounds for remand.

In summary, I recognize that the transcript reflects some level of physical restriction, and my recommendation to uphold the administrative findings should not be read to trivialize those conditions.  Nonetheless, because the ALJ's decision was well within the "zone of choice" accorded to the fact-finder at the administrative hearing level, it should not be disturbed by this Court. *Mullen v. Bowen, supra*.

-19-

## VI.   CONCLUSION

For these reasons, I recommend that Defendant's Motion for Summary Judgment [Docket #17] be GRANTED and that Plaintiff's Motion for Summary Judgment [Docket #12] be DENIED.

Any objections to this  Report and Recommendation must be filed  within 14 days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir.  1991); *United States v. Walters,* 638 F.2d 947 (6th Cir.  1981).  Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir.  1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir.  1987).

Any objections must be labeled as "Objection #1," "Objection #2," etc., and any objection must recite *precisely* the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party must file a concise response proportionate to the objections in length and complexity.  The response must specifically address each issue raised in the objections, in the same order and labeled as "Response to Objection #1," "Response to Objection #2," *etc.*

Date: November 17, 2020                    s/R. Steven Whalen_____
                                           R. Steven Whalen
                                           United States Magistrate Judge


**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing document was sent to parties of record on November 17, 2020 electronically and/or by U.S. mail.

                                           s/Carolyn M. Ciesla_____
                                           Case Manager